WHITE MOUNTAIN POWER COMPANY

*v.*

MAINE CENTRAL RAILROAD COMPANY.

Argued September 9, 1965.
Decided October 5, 1965.

*Hall, Zellers, Morse & Gallagher (Mr. Atlee F. Zellers* orally), for the plaintiff.

*Scott W. Scully* (of Maine) and *Sulloway, Hollis, Godfrey & Soden (Mr. James B. Godfrey* orally), for the defendant.

BLANDIN, J. This is a companion case of *White Mountain Power Co.* v. *Whitaker,* 106 N. H. 436, decided this day. As to such of the facts and issues as are similar, it will not be necessary to discuss them here at length.

In substance, the defense rests its appeal upon three issues: (1) The Commission had no power to condemn the defendant's property which is already devoted to public use. (2) The necessity for routing the transmission line along the railroad right of way was not established. (3) The scope of the permanent easement granted the plaintiff will unduly "hamper, restrict and endanger the operation of the railroad."

At the threshold of our inquiry, we note the necessity for a 33,000-volt transmission line to satisfy the reasonable requirements of service to the public is settled by *White Mountain Power Co.* v. *Whitaker, supra,* and need not be recapitulated here.

The railroad first addresses itself to the proposition that the Commission's order "is an unlawful exercise of eminent domain of the railroad's land presently devoted to the public use." Upon analysis of this argument and the cases cited in support, including *Piscataqua Bridge* v. *New Hampshire Bridge,* 7 N.H. 35; *Barber* v. *Andover,* 8 N.H. 398; *Peirce* v. *Somersworth,* 10 N.H. 369, it seems that the railroad bases its case upon the claim that the plaintiff failed to prove the necessity for taking railroad land. As stated in the defendant's brief, "in the absence of express authority the power [to take] exists by implication only upon a showing of necessity, i.e. that a denial of the taking will prevent the petitioning utility from serving the needs of the public."

We agree with the defendant's position that necessity must be shown and with its statement in oral argument that the case boils down to a question of statutory construction. RSA 371:1. However, we are unwilling to accept the further claim that the necessity for the taking must be "absolute." We said in *Public Service Co.* v. *Shannon,* 105 N.H. 67, 69, "RSA 371:1 grants to public utilities 'the power to condemn . . . in broad and very general language' 1 Powell, Real Property, *s.* 146, *p.* 548." This opinion further went on to state that the statute is to be given

"a reasonable construction." *Id.,* 69. Reading into the statute words of such strict limitation as "absolute necessity" would unduly hamper the objectives of the legislation and in our opinion would be an unreasonable construction of the statute. We believe that once reasonable necessity is shown, our law is that one utility devoted to public service may take property from another similarly engaged. *Northern Railroad* v. *Concord & Claremont Railroad,* 27 N. H. 183. In that case, the court upheld such a taking and said that it was proper "so long as the taking is for the public good." *Id.,* 196. In *Opinion of the Justices,* 66 N.H. 629, 674, the court made it plain that we recognize "the equality of owners of railroads and owners of other property" in so far as eminent domain is concerned. Distinctions between different types of property or property rights, so far as condemnation is concerned, have not been drawn here. In *Public Service Co.* v. *Shannon,* 105 N.H. 67, we pointed out that the condemnation statute (RSA 371:1), in its present form, has been extended in scope since earlier days and has become more inclusive. As that case further holds, the broad and general language of that statute should be sensibly construed to effect its objectives of serving the public good. See also, 1 Powell, Real Property, *s.* 146, *p.* 548. Our rule seems in accord with what we believe to be the better view. 18 Am. Jur., Eminent Domain, *ss.* 98, 100, 102; Annot. 173 A.L.R. 1362, 1363, 1397; 1 Nichols, Eminent Domain (3d *ed.*) *ss.* 2.2(1), 2.2(5), 2.2(8); 1 Powell, *supra, s.* 146, *p.* 551. See 29A C.J.S., Eminent Domain, *ss,* 79, 80.

As to the necessity of locating the transmission line within the railroad right of way, there was ample evidence to support a finding by the Commission that to do so would not materially interfere with railroad operations and would lower the cost of construction. It would also avoid cutting an unsightly 100-foot wide swath running parallel to the railroad right of way through forest lands set aside by the State as part of a scenic area. The railroad vice president in charge of engineering and transportation testified as to the effect of the line established by the Commission upon railroad operations: " . . . I don't think there would be any problem in any way . . . . "

Furthermore the defendant was willing to enter into negotiations for rental to the plaintiff if the transmission line were to be erected 28 feet from the center of the rails. The Commission's order placed the line 29 feet from the center of the rails.

Although there were conflicts in the testimony, these were for the Commission to resolve. *Plymouth Fire District* v. *Water Pollution Comm'n*, 103 N. H. 169. In this state of the record, where the needs for the extra power line are great, the benefit to the public which would result from the taking substantial, and the harm to the defendant comparatively minimal, the Commission could properly have reached the conclusion which it did. *Northern Railroad* v. *Concord & Claremont Railroad*, 27 N.H. 183; 1 Nichols, Eminent Domain (3d *ed.*) *s.* 2.2(8). See Annot. 173 A.L.R. 1362, 1397.

In summary, we believe the record supports the Commission's conclusions that the plaintiff had the power to condemn the defendant's property, that the necessity of routing the transmission line along the railroad right of way existed, and that the easement granted the plaintiff will not unduly hamper, restrict or endanger the operation of the railroad. It follows that the defendant has not sustained its burden of showing by "a clear preponderance of the evidence" that the Commission's order was "unlawful or unreasonable" (RSA 541:13; *Public Service Co.* v. *Shannon*, 105 N.H. 67), and the order is

*Appeal dismissed.*

All concurred.